# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLESTER WILLIAMS,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS, et al.,<br><br>　　　　　Defendants. | 1:19-cv-00250-LJO-GSA-PC<br><br>**SCREENING ORDER**<br><br>**ORDER DENYING PLAINTIFF'S MOTIONS TO AMEND/SUPPLEMENT THE COMPLAINT**<br>**(ECF Nos. 27, 31, 35, 37, 38.)**<br><br>**ORDER STRIKING LODGED SECOND AND THIRD AMENDED COMPLAINTS**<br>**(ECF Nos. 32, 36.)**<br><br>**ORDER DISMISSING FIRST AMENDED COMPLAINT, WITH LEAVE TO FILE A FOURTH AMENDED COMPLAINT**<br>**(ECF No. 23.)**<br><br>**THIRTY-DAY DEADLINE TO FILE FOURTH AMENDED COMPLAINT** |

## I. BACKGROUND

Sylester Williams ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the Complaint commencing this action on January 3, 2019, at the United States District Court for the Northern District of California. (ECF No. 1.) On February 21, 2019, the case was transferred to this court. (ECF No. 12.)

On March 22, 2019, Plaintiff filed the First Amended Complaint as a matter of course. (ECF No. 23.) On June 3, 2019, June 28, 2019, July 26, 2019, and September 19, 2019, Plaintiff

filed five motions to amend or supplement the complaint. (ECF Nos. 27, 31, 35, 37, 38.) On June 29, 2019 and July 26, 2019, Plaintiff lodged proposed Second and Third Amended Complaints. (ECF Nos. 32, 36.)

Plaintiff's First Amended Complaint is now before the court for screening. 28 U.S.C. § 1915. The court shall also address Plaintiff's pending motions to amend or supplement the complaint.

## II. SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

///

**III.    PLAINTIFF'S ALLEGATIONS IN THE FIRST AMENDED COMPLAINT**

Plaintiff is presently incarcerated at Mule Creek State Prison in Ione, California. The allegations at issue in the First Amended Complaint arose from events at the California Correctional Institution in Tehachapi, California, when Plaintiff was incarcerated there in the custody of the California Department of Corrections and Rehabilitation (CDCR). Plaintiff names Scott Kernan (Secretary, CDCR) as the sole defendant ("Defendant").

Plaintiff's allegations follow:

Plaintiff is a non-violent Third Strike inmate in prison since 1999 for indecent exposure. Following the passage of Proposition 57, Plaintiff was immediately eligible for parole consideration under the California Constitution, Article 1, § 32.    However, Plaintiff was denied a non-violent parole consideration hearing under Proposition 57 because the then-Secretary of the CDCR, defendant Scott Kernan, developed Title 15 rules in April 2017 and adopted them so he could willfully and deliberately block parole consideration for Plaintiff, along with over three thousand other non-violent Third Strike inmates.

Plaintiff sued the CDCR in state court over the matter and was appointed counsel.  On October 26, 2018, Plaintiff won and the Santa Clara County Superior Court ordered the CDCR to provide Plaintiff with immediate parole consideration as required by Proposition 57.  The CDCR then informed counsel that they were giving up all rights to appeal because they agreed with the Superior Court's decision.  Defendant may not give up his right to appeal the court order and then challenge the constitutionality of the order.  Giving up appeal rights is an admission of guilt, and therefore defendant Kernan has no chance of success in the present lawsuit.

Defendant Kernan has violated Plaintiff's due process rights by failing to implement the terms of the law created by Proposition 57 when liberally construed.  Defendant Kernan issued regulations that allegedly resulted in a mismatch between Plaintiff's parole date consideration and EPRD.[1]  Plaintiff was entitled to a non-violent parole consideration hearing pursuant to

///

---

[1] Earliest Possible Release Date.

Proposition 57, along with a statement of reasons why parole was denied. These due process protections were not met.

Plaintiff seeks monetary damages and declaratory relief.

## IV. PLAINTIFF'S PENDING MOTIONS

Now pending are Plaintiff's three motions to amend or supplement the complaint, filed on June 3, 2019, June 28, 2019, July 26, 2019, and two motions to amend filed on September 19, 2019. (ECF Nos. 27, 31, 35, 38, 39.) Plaintiff also lodged proposed Second and Third Amended Complaints on June 28, 2019 and July 26, 2019, respectively. (ECF Nos. 32, 36.)

The court has thoroughly reviewed the First Amended Complaint, all of Plaintiff's pending motions to amend or supplement the complaint, the lodged Second Amended Complaint, and the lodged Third Amended Complaint. All of Plaintiff's pending motions to amend, or supplement the complaint shall be denied as moot because Plaintiff shall be granted leave to file a Fourth Amended Complaint complete in itself without reference to any other complaint.

Plaintiff has requested to add claims to the complaint for retaliation, discrimination and violation of the Ex Post Facto Clause. The court shall provide Plaintiff with the legal standards for the proposed new claims. Plaintiff should review the standards before deciding whether to bring new claims. Plaintiff may not add new defendants for unrelated claims.

Plaintiff's requests to file a supplemental complaint to add allegations of events occurring after this case was filed on June 3, 2019 shall be denied as futile.[2] Plaintiff proposes to add allegations that he spoke with two analysts on July 11 and 12, 2019, about a 602 prison appeal he filed at Salinas Valley State Prison. Plaintiff reports that he was told by the analysts that he

///

---

[2] Under Rule 15(d), "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). A party may only file a supplemental complaint with leave of court. Id. When considering whether to allow a supplemental complaint, the court considers factors such as whether allowing supplementation would serve the interests of judicial economy; whether there is evidence of delay, bad faith or dilatory motive on the part of the movant; whether amendment would impose undue prejudice upon the opposing party; and whether amendment would be futile. See San Luis & Delta-Mendota Water Authority v. United States Department of the Interior, 236 F.R.D. 491, 497 (E.D. Cal. 2006) (citing Keith v. Volpe, 858 F.2d 467 (9th Cir. 1988), Foman v. Davis, 371 U.S. 178 (1962), and Planned Parenthood of S. Ariz. v. Neely, 130 F.3d 400 (9th Cir. 1997)).

does not qualify for parole consideration pursuant to Proposition 57, and that his only remedy is to proceed under habeas corpus.

This information conveyed to Plaintiff in July 2019 is not relevant to Plaintiff's claims at issue in this case, namely that defendant Kernan acted against Plaintiff when he developed Title 15 rules in April 2017, and adopted them so he could willfully and deliberately block parole consideration for Plaintiff and other inmates. Moreover, this Eastern District court lacks venue over claims arising from allegations of events occurring at Salinas Valley State Prison which is located in the Northern District of California. Therefore, it would be futile for Plaintiff to file a supplemental complaint to add allegations describing what he was told in July 2019 about his qualification for parole consideration.

## V. PLAINTIFF'S CLAIMS IN THE FIRST AMENDED COMPLAINT

### A. <u>42 U.S.C. § 1983</u>

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" <u>Graham v. Connor</u>, 490 U.S. 386, 393-94 (1989) (quoting <u>Baker v. McCollan</u>, 443 U.S. 137, 144 n.3 (1979)); <u>see also</u> <u>Chapman v. Houston Welfare Rights Org.</u>, 441 U.S. 600, 618 (1979); <u>Hall v. City of Los Angeles</u>, 697 F.3d 1059, 1068 (9th Cir. 2012); <u>Crowley v. Nevada</u>, 678 F.3d 730, 734 (9th Cir. 2012); <u>Anderson v. Warner</u>, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. <u>Long v. County of Los Angeles</u>, 442 F.3d 1178, 1185 (9th Cir. 2006); <u>see also</u> <u>Marsh v. Cnty. of San Diego</u>, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983,

'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

### B. Proposition 57

Recently, the court in Ramos v. Spearman[3] discussed Proposition 57 as follows.

> In 2016, California voters approved Proposition 57 which, in pertinent part, requires that "[a]ny person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term for his or her primary offense." Cal. Const. Art. I, § 32(a)(1). The implementing regulations define a "violent felony" as "a crime or enhancement as defined in subdivision (c) of section 667.5 of the Penal Code." Cal. Code Regs. tit. 15, § 3490 (2019).[4]
>
> Under Proposition 57, the "full term for the primary offense" is defined as "the longest term of imprisonment imposed by the court for any offense, excluding the imposition of an enhancement, consecutive sentence, or alternative sentence." Id., § 32(a)(1)(A). An indeterminate life sentence under the Three Strikes law is

---

[3] Ramos v. Spearman, 2:19-cv-1662-KJN P, 2019 WL 4571943 at *2 (E.D. Cal. Sept. 20, 2019).

[4] "The undersigned finds that plaintiff's claim is properly brought in a civil rights action because a finding in plaintiff's favor, i.e., that he is entitled to a parole hearing pursuant to Proposition 57, will not necessarily lead to his immediate or speedier release from custody. See Nettles v. Grounds, 830 F.3d 922, 932 (9th Cir. 2016) (en banc) (claim that would not necessarily lead to immediate or speedier release from custody falls outside the core of habeas corpus)." Ramos, at *2, fn.1.

considered an "alternative sentence," see In re Edwards, 26 Cal. App. 5th 1181, 1187 (Cal. App. 2018), and, therefore, is not a primary offense term that must be served before a prisoner is eligible for parole consideration under Proposition 57. Accordingly, a Three Strikes indeterminate sentence must be put aside" for purposes of determining the full term of a prisoner's primary offense. Id. at 1192.

Further, following the California Court of Appeal decision in In re Edwards, 26 Cal. App. 5th 1181 (Cal. App. 2018) (finding that inmates serving Three Strike sentences for nonviolent offenses are constitutionally entitled to parole consideration under Proposition 57), CDCR enacted emergency regulations to accord parole consideration to nonviolent offenders indeterminately sentenced pursuant to the Three Strikes Law. See Proposed Regulations, Cal. Code Regs. tit. 15, §§ 3495-97. These regulations were given temporary emergency effect on January 1, 2019, pending final adoption.

The CDCR also promulgated regulations establishing a screening process for inmates who would be referred for parole consideration under Proposition 57.[5] See Cal. Code Regs. tit. 15, § 3492 (2019); see also In re McGhee, 34 Cal. App. 5th 902, 907 (2019). "However, in April 2019, the California Court of Appeal, applying principles of administrative law, held that the CDCR regulation establishing the screening process was invalid and ordered that the plaintiff in that case, an inmate

---

[5] "'Under these regulations, an inmate is eligible for referral to the Parole Board only if all of the following are true: (1) The inmate is not currently serving a Security Housing Unit term; (2) The Institutional Classification Committee has not assessed the inmate a Security Housing Unit term within the past five years, unless the department assessed the Security Housing Unit term solely for the inmate's safety; (3) The inmate has not served a Security Housing Unit term in the past five years, unless the department assessed the Security Housing Unit term solely for the inmate's safety; (4) The inmate has not been found guilty of a serious rule violation for a Division A-1 or Division A-2 offense as specified in subsection 3323(b) or 3323(c) within the past five years; (5) The inmate has not been assigned to Work Group C as specified in subsection 3044(b)(4) in the past year; (6) The inmate has not been found guilty of two or more serious Rules Violation Reports in the past year; (7) The inmate has not been found guilty of a drug-related offense as specified in section 3016 or refused to provide a urine sample as specified in subsection 3290(d) in the past year; (8) The inmate has not been found guilty of any Rules Violation Reports in which a Security Threat Group nexus was found in the past year; and (9) The inmate's nonviolent parole eligible date falls at least 180 calendar days prior to his or her earliest possible release date and the inmate will not reach his or her earliest possible release date for at least 210 calendar days.'" Ramos, 2019 WL 4571943, at *2 fn.2 (quoting Stewart v. Borders, 2019 WL 3766557 at 3 n. 4 (C.D. Cal. Aug. 9, 2019) (citing Cal. Code Regs. tit. 15, § 3492(c) (2019)).

whom prison officials had refused to refer to the Parole Board for parole consideration under Proposition 57, be referred within 60 days." Stewart v. Borders, 2019 WL 3766557 at *3 (C.D. Cal. 2019) (citing In re McGhee, 34 Cal. App. 5th at 839.) "In July 2019, the CDCR released an 'Implementation Plan for the McGhee Decision.'" Id. "According to the CDCR's Implementation Plan, effective July 9, 2019, the CDCR will no longer apply behavior based public screening criteria to eligible nonviolent offenders and all indeterminately-sentenced nonviolent offenders who are eligible for parole consideration under Proposition 57 will be referred to the Parole Board for a parole hearing 180 days prior to their Nonviolent Parole Eligible Date, unless they have previously been scheduled for a parole hearing or will be eligible for a parole hearing within the next 12 months under any other provision of law." Id.

### B. Procedural Due Process --- Fourteenth Amendment

The Due Process Clause protects prisoners from being deprived of life, liberty, and property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466-68 (1983).

The existence of a liberty interest created by state law is determined by focusing on the nature of the deprivation. Sandin v. Connor, 515 U.S. 472, 481-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484.

## V. DISCUSSION

CDCR Secretary Scott Kernan is the only named defendant in this action. Plaintiff does not explain or describe the regulations defendant Kernan allegedly developed and adopted based on which defendant Kernan denied Plaintiff's request for a hearing pursuant to Proposition 57. As discussed above, effective July 9, 2019, CDCR began applying new regulations in response

to the opinion of the California Court of Appeal in In re McGhee. If Plaintiff is challenging the regulations applied by CDCR prior to July 9, 2019, his claim that defendant Kernan wrongly denied him a hearing pursuant to Proposition 57 appears moot.

In any event, in similar cases in which prisoners have filed Section 1983 complaints challenging the constitutionality of CDCR's application of Proposition 57 to their cases, federal courts have found that the prisoner-plaintiffs failed to allege a cognizable claim under § 1983 because the crux of their complaints concerned an alleged violation of state law. Ramos, 2019 WL 4571943 at *2 (citing see, e.g., Russell v. Diaz, 2019 WL 2613592, at *3 (E.D. Cal. 2019); Herrera v. California State Superior Courts, 2018 WL 400320 (E.D. Cal. Jan. 12, 2018); Daniels v. California Department of Corrections and Rehabilitation, 2018 WL 489155 (E.D. Cal. 2018); see also Galen v. Cty. of Los Angeles, 477 F.3d 652, 662 (9th Cir. 2007) ("Section 1983 requires [plaintiff] to demonstrate a violation of federal law, not state law.")). Plaintiff's complaint fails for the same reason. Although it mentions Due Process, the crux of the complaint is that defendant Kernan's actions violated California law, not that he deprived Plaintiff of due process or otherwise infringed his federal constitutional rights. Ramos, 2019 WL 4571943 at *2 (citing Cf. Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996).

In Herrera, the court noted that the California state court decisions addressing application of Proposition 57 were all unpublished and "uniformly state that Proposition 57 creates a mechanism for parole consideration, not a vehicle for resentencing, and does not entitle Plaintiff to seek relief in court in the first instance. Indeed, the plain language of the Art. I, sec. 32 provides that a person is eligible for 'parole consideration.' Any determination as to appellant's right to parole under Proposition 57 must be made, in the first instance, by the appropriate agency." Herrera, 2018 WL 400320 at *3; accord, Olivier v. CDCR, 2019 WL 462771, at *1, (E.D. Cal. Feb. 6, 2019) (Case No. 1:19-cv-00131 SKO HC) (citing Daniels, 2018 WL 489155, at *4) (internal quotation marks omitted)). The Herrera court concluded that the plaintiff's challenge to the application of Proposition 57 was not cognizable under Section 1983 because "it asserts only a violation or misinterpretation of state law," while Section 1983 "provides a remedy only for violation of the Constitution or law or treaties of the United States." Herrera, 2018 WL

400320, at *4, (citing Swarthout v. Cooke, 562 U.S. 216, 222, 131 S.Ct. 859, 178 L.Ed.2d 732 (2011)). "Plaintiff may not 'transform a state-law issue into a federal one merely by asserting a violation of due process.'" Id. (quoting Langford, 110 F.3d at 1389); accord, Crisp v. Kernan, 2:17-CV-2431 TLN KJN P, 2018 WL 2771310, at *4, (E.D. Cal. June 7, 2018).

Although it is unlikely that Plaintiff can cure the pleading defects discussed above, the First Amended Complaint shall be dismissed with leave to amend. As emphasized by the court in Herrera, Plaintiff is reminded that "[t]he violation of state regulations, rules and policies of the CDCR, or other state law is not sufficient to state a claim for relief under § 1983. Nonetheless, the court will grant Plaintiff leave to amend to allege that standards for parole have been met, and the minimum procedures adequate for due-process protection of that interest have not been met, to the extent Plaintiff can do so in good faith." Herrera, 2018 WL 400320, at *4; accord, Crisp, 2018 WL 2771310, at *4. If Plaintiff files an amended complaint, Plaintiff must describe the regulations defendant Kernan allegedly applied to wrongly deny Plaintiff's request for a hearing pursuant to Proposition 57. Plaintiff must also allege how this conduct violated his constitutional rights.

For the foregoing reasons, the First Amended Complaint shall be dismissed with leave to amend. Plaintiff will be granted leave to file a Fourth Amended Complaint (FAC) within thirty days. The FAC must be on the form provided herewith, signed by Plaintiff, labeled "Fourth Amended Complaint," and must provide the case number assigned this case. The FAC must be complete in itself without reference to Plaintiff's prior complaints. See Local Rule 15-220; Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).

In his pending motions to amend, Plaintiff requests leave to bring claims for retaliation, discrimination, and violation of the Ex Post Facto Clause. In the following paragraphs, the court shall set forth the legal standards for these claims for Plaintiff's review in deciding which claims to bring in the Fourth Amended Complaint.

///
///
///

### 1. **Retaliation**

As discussed by the Ninth Circuit in Watison v. Carter:

> "A retaliation claim has five elements. Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009). First, the plaintiff must allege that the retaliated-against conduct is protected. The filing of an inmate grievance is protected conduct. Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005).
>
> Second, the plaintiff must claim the defendant took adverse action against the plaintiff. Id. at 567. The adverse action need not be an independent constitutional violation. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). "[T]he mere *threat* of harm can be an adverse action...." Brodheim, 584 F.3d at 1270.
>
> Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct. Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal. See Pratt, 65 F.3d at 808 ("timing can properly be considered as circumstantial evidence of retaliatory intent"); Murphy v. Lane, 833 F.2d 106, 108–09 (7th Cir. 1987).
>
> Fourth, the plaintiff must allege that the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." Robinson, 408 F.3d at 568 (internal quotation marks and emphasis omitted). "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," Brodheim, 584 F.3d at 1269, that is "more than minimal," Robinson, 408 F.3d at 568 n.11. That the retaliatory conduct did not chill the plaintiff from suing the alleged retaliator does not defeat the retaliation claim at the motion to dismiss stage. Id. at 569.
>
> Fifth, the plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution...." Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985). A plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious, id., or that they were "unnecessary to the maintenance of order in the institution," Franklin v. Murphy, 745 F.2d 1221, 1230 (9th Cir. 1984)."

Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012).

### 2. **Equal Protection**

The Equal Protection Clause requires the State to treat all similarly situated people equally. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). This does not mean, however, that all prisoners must receive identical treatment and resources. See Cruz v. Beto, 405 U.S. 319, 322 n. 2 (1972); Ward v. Walsh, 1 F.3d 873, 880 (9th Cir. 1993); Allen v. Toombs, 827 F.2d 563, 568–69 (9th Cir. 1987).

///

"To prevail on an Equal Protection claim brought under § 1983, Plaintiff must allege facts plausibly showing that '"the defendants acted with an intent or purpose to discriminate against [him] based upon membership in a protected class,"' (citing see Thornton v. City of St. Helens, 425 F.3d 1158, 1166 (9th Cir. 2005) (quoting Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001)), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Department of Agr., 553 U.S. 591, 601-02, 128 S.Ct. 2146 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

### 3. **Ex Post Facto Clause**

The United States Constitution provides that Congress shall not pass a[n] . . . *ex post facto* law.  U.S. Const. art. I, § 9, cl. 3.  The *ex post facto* prohibition forbids Congress and the States from enacting any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed."  Weaver v. Graham, 450 U.S. 24, 28 (1981) (citations omitted).

A law violates the *ex post facto* clause under three circumstances: (1) when it punishes an act which was not a crime when it was committed; (2) when it makes a crime's punishment greater than when the crime was committed; or (3) when it deprives a person of a defense available at the time the crime was committed.  Collins v. Youngblood, 497 U.S. 37, 42, 110 S.Ct. 2715, 2719 (1990).  A new procedure must constitute punishment in order to violate the *ex post facto* clause.  See United States v. Collins, 61 F.3d 1379, 1983 (9th Cir. 1995), cert. denied, 116 S.Ct. 543 (1995); United States v. Huss, 7 F.3d 1444, 1447 (9th Cir. 1993).

## VI. CONCLUSION AND ORDER

For the foregoing reasons, the court finds that Plaintiff fails to state a cognizable claim in the First Amended Complaint upon which relief may be granted under § 1983.  Therefore, the court will dismiss the First Amended Complaint for failure to state a claim and grant Plaintiff leave to file a Fourth Amended Complaint addressing the issues discussed above.  Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend

when justice so requires." Plaintiff is granted leave to file the Fourth Amended Complaint within thirty days.

The Fourth Amended Complaint must allege facts showing what each named defendant did that led to the deprivation of Plaintiff's constitutional rights. Fed. R. Civ. P. 8(a); Iqbal, 556 U.S. at 678; Jones, 297 F.3d at 934. Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of changing the nature of this suit or adding unrelated claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints). Plaintiff should also note that he is not granted leave to add allegations of events occurring after the date he filed the Complaint, January 3, 2019.

Plaintiff is advised that an amended complaint supercedes his prior complaints, Lacey v. Maricopa County, 693 F 3d. 896, 907 n.1 (9th Cir. 2012) (*en banc*), and it must be complete in itself without reference to the prior or superceded pleading, Local Rule 220. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "Fourth Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's motions to amend or supplement the complaint, filed on June 3, 2019, June 28, 2019, July 26, 2019, and September 19, 2019, (ECF Nos. 27, 31, 35, 37, 38) are DENIED as moot and/or futile as discussed in this order;

2. Plaintiff's proposed Second Amended Complaint lodged on June 28, 2019, and proposed Third Amended Complaint lodged on July 26, 2019, (ECF Nos. 32, 36) are STRICKEN from the record;

3. Plaintiff's First Amended Complaint, filed on March 22, 2019, is DISMISSED for failure to state a claim, with leave to file a Fourth Amended Complaint within thirty days from the date of service of this order;

4. The Fourth Amended Complaint should be titled "Fourth Amended Complaint" and refer to case number 1:19-00250-LJO-GSA-PC;

5.  Failure to timely file a Fourth Amended Complaint pursuant to this order may result in the dismissal of this action, without prejudice; and
6.  The Clerk of Court is directed to send Plaintiff, together with a copy of this order, a copy of the form complaint used by prisoners in this district to pursue a civil rights action under 42 U.S.C. § 1983.

IT IS SO ORDERED.

Dated: **December 19, 2019**            **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE